IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA C.,[1] | ) |
| Plaintiff, | ) ) ) |
| | ) No. 20 C 4761 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Theresa C.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 12, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 14, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On February 27, 2018, Plaintiff filed a claim for DIB, alleging disability since October 27, 2017, due to a back injury. [Dkt. 11-1, R. 174-80, 204.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 73, 85.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 16, 2019. [R. 29-63.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 31-58.] Vocational expert ("VE") Gary Paul Wilhelm also testified. [R. 58-61.] On July 31, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 13-22.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 13-22.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 27, 2017. [R. 15.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: spine disorder and inflammatory arthritis. [R. 15-16.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 16-17.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can no more than occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance, kneel, crouch, and crawl; she can occasionally stoop; after sitting 45 minutes to an hour,

2

she may stand or walk as needed throughout the workday; and she can be off task up to 15% of the day. [R. 17-21.] At step four, the ALJ concluded that Plaintiff would be able to perform her past relevant work as a nurse consultant, both as it is actually and generally performed, leading to a finding that she is not disabled under the Social Security Act. [R. 21-22.]

## **DISCUSSION**

**I.    Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in

3

reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

      The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.     Analysis**

In support of her request for reversal and remand, Plaintiff argues that the ALJ (1) erred in evaluating Dr. Ramin Rabbani's medical opinion, (2) imposed a more permissive RFC that was not supported by the VE's testimony, (3) failed to resolve discrepancies between the VE's testimony and the "Dictionary of Occupational Titles" ("DOT"), (4) erred in evaluating Plaintiff's subjective symptom statements, and (5) failed to address the opinions of two treating physicians that Plaintiff could not work. [Dkt. 13, Pl.'s Mem. at 10-23.] The Commissioner argues in opposition that (1) the ALJ reasonably relied on the VE's testimony at step four, (2) Plaintiff has not identified any conflict between the VE's testimony and the DOT, (3) the ALJ reasonably assessed the medical opinion evidence under the current regulations, and (4) the ALJ reasonably evaluated Plaintiff's subjective symptoms. [Dkt. 15, Def.'s Mem. at 3-15.] After reviewing the record and the briefs submitted by the parties, this Court agrees with Plaintiff that the ALJ failed to adequately explain her evaluation of Dr. Rabbani's medical opinion. Because this failure alone warrants remand, the Court does not reach Plaintiff's additional arguments.

As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinion or prior administrative medical finding. Instead, the ALJ considers a variety of factors in assessing medical opinions, but the "most important factors"—and the only ones that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Further, the ALJ is required to give a source-level articulation of how she considered the medical opinions and prior administrative medical findings, meaning that when a medical source provides multiple opinions or findings, the ALJ only needs to explain how she

5

considered those opinions or findings from that source "together in a single analysis using the factors listed in [§§ 404.1520c(c)(1)-(5)], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

Plaintiff argues that the ALJ erroneously "cherrypicked" the portions of Dr. Rabbani's opinion that supported the ALJ's RFC determination while failing to explain why she rejected the portions of the opinion that were more restrictive than the RFC. [Pl.'s Mem. at 10-12.] Specifically, Plaintiff contends that the ALJ failed to explain why she did not adopt Dr. Rabbani's restrictions on walking, standing, sitting, and stooping, which would have precluded Plaintiff's past work as a nurse consultant. [*Id.* at 11.] The Court concludes that the ALJ did not sufficiently explain how she considered Dr. Rabbani's opinion, in particular the restrictions regarding Plaintiff's ability to walk, stand, and sit, and that this failure warrants remand.

Plaintiff alleged that she stopped working following her preexisting back injury, which had been previously treated with surgery, worsening after she fell off a ladder in September 2017. [R. 52-53, 228.] In January and February 2019, Dr. Rabbani, a physician consultant, reviewed Plaintiff's treatment records following the fall and opined in both instances that she could perform full-time work with, as relevant here, the following limitations: she can lift, carry, push, and pull up to 10 pounds frequently and 20 pounds occasionally; she can never climb ladders; she can occasionally climb stairs; she can frequently balance; she can never stoop; she can occasionally kneel, crouch, crawl, and bend; she can sit frequently, no more than 2 hours continuously, and for 4 hours per day total; she can stand occasionally, no more than 1 hour continuously, and for 2 hours per day total; and she can walk occasionally, no more than 1 hour continuously, and for 2 hours per day total. [R. 1112, 1117.]

6

In discussing the medical opinions and prior administrative medical findings here, the ALJ first repeated all of Dr. Rabbani's conclusions in her summary of the medical evidence. [R. 20.] When later discussing the persuasiveness of Dr. Rabbani's opinion, the ALJ's analysis was as follows:

> The undersigned finds the opinion rendered by orthopedic surgeon[,] Ramin Rabbani, M.D. persuasive (Ex.s 9F; 10F). Dr. Rabbani opined that the claimant would be limited to light work with additional postural limitations and the claimant would be able to perform fulltime work with the noted restrictions (*id.*). While the ultimate determination of disability is reserved for the Commissioner, Dr. Rabbani's evaluation is consistent with the hearing level evidence and reflects that [*sic*] the treatment records at the time he issued his opinion.

[R. 21.] As to the state agency physicians' findings at the initial and reconsideration levels, in April and August 2018, respectively, the ALJ similarly found them "persuasive and consistent with the evidence provided at the time they were rendered." [*Id.*; *see* R. 64-72, 74-83.] She then noted that both agency physicians opined Plaintiff "was limited to light work," but the opinion at the reconsideration level added "additional postural limitations based on additional evidence." [R. 21.]

The ALJ's discussion is nearly devoid of any analysis regarding supportability and consistency, as required, although the Court ultimately is not remanding on this basis alone. With respect to the prior administrative findings, the ALJ concluded without elaboration that they were "consistent with the evidence." [R. 21.] And the consideration of Dr. Rabbani's opinion similarly amounts to barely more than a conclusion that the evaluation was consistent with the evidence and treatment record. Without any explanation or elaboration on exactly *what* these were "consistent with," however, it is unclear just what medical evidence the ALJ thought supported Dr. Rabbani's and the state agency physicians' opinions and in what way. This lack of detail does not give the Court an opportunity to evaluate the ALJ's reasoning regarding

7

consistency, which is problematic. *See, e.g., Jose V. v. Kijakazi*, 20 C 6975, 2022 WL 3139571, at *3 (N.D. Ill. Aug. 5, 2022) (concluding that ALJ's failure to discuss supportability and consistency with any specificity was error); *Patrice W. v. Kijakazi*, No. 20 C 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) ("The ALJ thus failed entirely to explain the supportability of the consultants' opinions, and only identified a conclusion—as opposed to an explanation—with respect to the consistency of the consultants' opinions with the record.").

Moreover, despite finding Dr. Rabbani's opinion persuasive without qualification, the ALJ inexplicably did not adopt into the RFC all the restrictions that Dr. Rabbani identified, nor explicitly state that she was not doing so or why she was deviating from that opinion. [*See* R. 17-21.] In crafting the RFC, the ALJ concluded that Plaintiff could perform light work with the following additional limitations: she can no more than occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance, kneel, crouch, and crawl; she can occasionally stoop; after sitting 45 minutes to an hour, she may stand or walk as needed throughout the workday; and she can be off task up to 15% of the day. [R. 17.] The RFC was more permissive than Dr. Rabbani's opinion in part because the ALJ's RFC allowed Plaintiff to frequently kneel, crouch, and crawl (as opposed to only occasionally) and to occasionally stoop (as opposed to never). [R. 17, 1112, 1117.]

Most significantly, although the ALJ characterized Dr. Rabbani's opinion as one that established that Plaintiff could perform light work, Dr. Rabbani had not actually categorized the work Plaintiff could perform as "light" anywhere in his opinion, *see* [R. 1110-19], and his opinion was indeed even more limited than that. Although Dr. Rabbani's lifting limitations matched "light work" as defined in the regulations, the doctor's standing and walking limitations did not match and were more restrictive than those necessary for "light work": light work is

"lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and it "requires a good deal of walking or standing," with "the full range of light work requir[ing] standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983). [*See* R. 1112, 1117.] Here, Dr. Rabbani opined that Plaintiff could stand and walk for no more than 2 hours each a day, amounting to 4 total hours of standing or walking. [R. 1112, 1117.] Thus, in concluding that Plaintiff could perform light work, the ALJ determined that Plaintiff could stand or walk for 6 hours total in a workday, more than the 4 hours total that Dr. Rabbani had opined, but never explained the discrepancy. [*See* R. 17-21.]

Further, even though Dr. Rabbani concluded that Plaintiff could sit for at most 4 hours in a day, the ALJ did not impose a limitation on sitting other than allowing Plaintiff to stand or walk after every 45 minutes to an hour of sitting. [R. 21.] The ALJ likewise did not give any reason for this difference between the RFC and Dr. Rabbani's opinion. And Dr. Rabbani's limitations in standing/walking and sitting, when combined, raised an interesting, unaddressed dilemma: as discussed above, Plaintiff would be unable to stand or walk enough to perform light work, but Plaintiff would seemingly also be unable to sit long enough to perform sedentary work, in which sitting "should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5. By not discussing Dr. Rabbani's opinion in any detail, including this apparent issue, the ALJ improperly avoided grappling with what level of work Plaintiff could perform if these limitations were adopted.

Relying on the language in 20 C.F.R. § 404.1520c(b)(1), the Commissioner contends that the ALJ's failure to evaluate separately Dr. Rabbani's opined restrictions on standing, walking, sitting, and stooping is not error because the ALJ is not required to assess every limitation opined

9

by a particular medical source. [Def.'s Mem. at 7-8.] But that statutory provision could also be read to refer to multiple opinions from one medical source over time, explaining that the ALJ can evaluate those separate opinions from the same source all together. 20 C.F.R. §404.1520c(b)(1) (The ALJ will "articulate how [she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). Nothing in that regulatory section, however, speaks to whether or not the ALJ needs to discuss the parts of a medical source's opinion that are directly relevant to determining a plaintiff's RFC, which is the issue here. Rather, the ALJ still has an overarching responsibility to explain her decision regarding the connection between a medical opinion and the RFC with enough thoroughness and clarity as is necessary for the Court to assess whether the ALJ's conclusions in the RFC are supported by substantial evidence. *Scrogham*, 765 F.3d at 695. This includes addressing evidence that does not support her conclusion and explaining why she rejected it. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see, e.g., Grazyna C. v. Kijakazi*, No. 3:21-cv-50030, 2022 WL 2802336, at *3-4 (N.D. Ill. July 18, 2022) (ALJ erred in not explaining why she did not adopt a significant limitation opined by state agency physicians). Here, the ALJ properly considered Dr. Rabbani's multiple opinions from January and February 2019 in one paragraph, as permitted by 20 C.F.R. §404.1520c(b)(1), but failed to address the relevant parts of Dr. Rabbani's opinions that addressed the limitations that the ALJ apparently chose not to adopt in her RFC, which results in an insufficient basis for this Court's review. [*See* R. 21, 1112-13, 1117-18.]

To be sure, the ALJ was not *required to adopt* Dr. Rabbani's opinion in its entirety—or indeed, any portion of it—into the RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("As we have stated previously, an ALJ must consider the entire record, but the ALJ is not

10

required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). But the problem in this case is a lack of required analysis— the ALJ ruled that she found Dr. Rabbani's opinion "persuasive," but did not address the portions that she ultimately did not incorporate into the RFC (or why she rejected those limitations), which if adopted, would have precluded Plaintiff from performing light work and also would have raised questions as to whether Plaintiff could perform sedentary work, as discussed above. [R. 21.] Accordingly, the Court concludes that the ALJ erred when she failed to explain how or why Dr. Rabbani's opined limitations were apparently rejected for the RFC determination. *See, e.g., Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."); *James J. v. Kijakazi*, No. 19-cv-02903, 2022 WL 558364, at *5-6 (N.D. Ill. Feb. 24, 2022) (ALJ erred in affording agency physicians' findings "great weight" but not addressing a specific limitation that the ALJ declined to adopt in the RFC).

The Commissioner argues that any error was nonetheless harmless because Plaintiff has not demonstrated that the ALJ's acceptance of Dr. Rabbani's limitations on standing, walking, sitting, and stooping would preclude her past relevant work as actually or generally performed. [Def.'s Mem. at 8-9.] The Court "will not remand a case to the ALJ for further specification where [it is] convinced that the ALJ will reach the same result." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)) (alterations added). In assessing whether an error is harmless, the Court "examine[s] the record to determine whether '[it] can **predict with great confidence** what the result of remand will be.'" *Butler*, 4 F.4th at 504 (quoting *McKinzey*, 641 F.3d at 892) (emphasis and alterations added).

11

The Court is not confident, however, that, if the ALJ considers Dr. Rabbani's opinion more thoroughly in her decision, the ALJ would reach the same result on remand.[3] Of course, as discussed above, one possibility on remand is that the ALJ will find certain portions of Dr. Rabbani's opinion persuasive while rejecting others, and Plaintiff's RFC would not change in any meaningful way. But that is not the only possibility. Another is that the ALJ accepts the standing and walking limitations opined by Dr. Rabbani—4 hours total in an 8-hour workday—which would preclude light work (which requires 6 hours total of standing and walking) and necessarily change Plaintiff's RFC. "The ALJ's choice of exertional level is among the most important aspects of the RFC, and thus [to] the decision to grant or deny benefits." *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022). Importantly, the ALJ also used the RFC to ask the VE whether Plaintiff could perform her past relevant work as a nurse consultant, which the VE testified that, based on that RFC, she could do as both actually and generally performed. [R. 59-61.]

The Court recognizes that if the ALJ accepted Dr. Rabbani's limitation to only 4 hours of standing and walking total in an 8-hour day, that seemingly may not preclude Plaintiff's past work as she actually or generally performed it. That is because, with respect to how she actually performed her past work, Plaintiff testified that she sat at her job for what she approximated as 4 to 5 hours a day, [R. 52], presumably meaning that she stood or walked for the other 4 to 3

---

[3] The Court focuses here on the sitting, standing, and walking limitations, as it finds persuasive the Commissioner's contention that any failure to impose a stooping limitation was harmless. [*See* Def.'s Mem. at 9.] Plaintiff did not testify that her past work required any stooping, and the DOT lists "nurse consultant" as a position for which stooping "does not exist." *See* DOT 075.127-014, Nurse, Consultant, 1991 WL 646741. Thus, even a finding that Plaintiff could not stoop would not appear to impact the ALJ's determination that Plaintiff could perform her past relevant work.

hours.[4] With respect to how her past work is generally performed, a nurse consultant job in the DOT is classified as sedentary, 1991 WL 646741, meaning no more than 2 hours of standing or walking is required in a day. But these potential outcomes are merely speculative at this stage where the ALJ's current RFC did not adopt a 4-hour standing/walking limitation and thus the VE had no opportunity to testify regarding the effect of any such limitation.

In any event, however, there is yet another possibility that would be even more favorable to Plaintiff: the ALJ could adopt the sitting limitation of 4 hours total that Dr. Rabbani opined was needed, which would likely preclude Plaintiff from performing her past work as she actually or generally performed it. As for how she actually performed it, Plaintiff would be unable to sit for the outer limit of 5 hours that she testified that she did in that job. [R. 52.] And as generally performed, sitting for sedentary work "should generally total approximately 6 hours of an 8-hour workday," but Plaintiff would only be able to sit for 4 hours. SSR 83-10, 1983 WL 31251, at *5. The Court cannot determine in this scenario whether the limitation, if accepted, would have no effect on the ALJ's conclusion that Plaintiff was not disabled, because the ALJ never questioned the VE about any limitation on sitting, or how such a limitation would impact Plaintiff's ability to perform her past relevant work. [*See* R. 59-61.]

Thus, on this record, and with multiple possible permutations, the Court cannot say with "great confidence" that adoption of Dr. Rabbani's opinion (in whole or in part) would necessarily lead to the same finding that Plaintiff can perform her past work and is therefore not disabled. *Butler*, 4 F.4th at 504; *see, e.g., Poole*, 28 F.4th at 796-98 (remanding where unexplained contradiction in ALJ's RFC determination left court with doubt as to whether error

---

[4] Upon questioning by Plaintiff's attorney, the VE recharacterized this testimony as 4 to 5 hours of walking and standing. [R. 60-61.]

13

was harmless). Remand is therefore warranted so that the ALJ can explain according to the regulatory factors her evaluation of the medical opinion evidence (including Dr. Rabbani's standing, walking, and sitting limitations), determine what impact the evidence has on the RFC, and question the VE about Plaintiff's ability to perform her past work with the (possibly revised) RFC.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 12] is granted, and the Commissioner's motion for summary judgment [dkt. 14] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 9/30/22

BETH W. JANTZ
United States Magistrate Judge